**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| Eli Rubel, <br><br> Plaintiff, <br><br> v. <br><br> Acclaim Financial Group, LLC, and FPX, LLC. <br><br> Defendants. | Case No. 6:15-cv-859 <br><br> **PLAINTIFF ELI RUBEL'S COMPLAINT** |

Plaintiff Eli Rubel, as and for his Complaint, states and alleges the following:

## THE PARTIES

1. Eli Rubel ("Rubel"), Plaintiff herein, is an individual residing in San Francisco, California.

2. Acclaim Financial Group, LLC ("Acclaim") is a Texas limited liability company with its principal place of business in Tyler, Texas.

3. FPX, LLC ("FPX") is a Delaware limited liability company with its headquarters in Dallas, Texas.

## JURISDICTION AND VENUE

4. Original jurisdiction of this matter is founded on 28 U.S.C. § 1332, as there is complete diversity and the amount in controversy exceeds $75,000.

5. Venue is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claim occurred within this judicial district, and Acclaim is located within this judicial district.

6. This Court has personal jurisdiction over Acclaim and FPX by virtue of their

continuous and systematic contacts with Texas as both companies are headquartered in Texas.

7. This Court further has personal jurisdiction over Acclaim due to the express contractual agreement of the parties.

## FACTUAL BACKGROUND

8. Rubel is the co-founder, inventor, and CEO of a start-up software company named Secure Document Technology Company d/b/a Glider ("Glider").

9. Glider created and wholly-owned a unique software system that automated the closing of contracts for companies of all sizes using sophisticated CRM solutions such as Sales*f*orce (the "Glider Software").

10. On February 10, 2014, Acclaim, a private equity firm, entered into a Stock Sale Agreement with Glider and Rubel, by which Acclaim wholly acquired the software company. Said Stock Sale Agreement is attached hereto as Exhibit 1 and incorporated herein by reference.

11. Acclaim states on public social media that its business is "Venture Capital & Private Equity."

12. Ms. Audrey Spangenberg states on public social media that she is the "Managing Member" of Acclaim, and has been from 1994 to date.

13. On information and belief, Acclaim entered into said Stock Sale Agreement specifically to convey Glider's software and other intellectual property to FPX, its wholly-owned subsidiary.

14. The headline of a press release on FPX's website states: "FPX Acquires Glider, Redefines the Sales Contracting Process." *See* http://fpx.com/press-releases/fpx-acquires-glider-redfines-the-sales-contracting-process (Apr. 22, 2014).

15. In its authored press release, FPX publicly stated that Glider was acquired by FPX as follows:

      a.      "DALLAS, April 22nd, 2014 – _FPX . . . announced today its acquisition of Portland-based Glider_ to extend its offerings to include best-in-class contract lifecycle management (CLM) automation. . . . Extending beyond typical CPQ solutions, _the acquisition now enables FPX to facilitate_ the entire end-to-end sales closing process through _workflow automation and predictive analytics_."

      b.      "[S]aid _Dave Batt, chief executive officer of FPX_[,] '[T]he _acquisition of Glider illustrates our commitment_ to provide companies the broad spectrum of applications to transform their operations . . . .'"

      c.      "[S]aid Dave Hawkins, vice president of sales operations at Fujitsu Network Communications[,] 'FPX has a solid track record as our vendor partner and _its acquisition of Glider will enable FPX customers to run more end-to-end business processes_ in the cloud." *See* http://fpx.com/press-releases/fpx-acquires-glider-redefines-the-sales-contracting-process (emphasis added).

16.    Ms. Audrey Spangenberg lists herself as the Chairman and CEO of FPX from February of 2009 through April of 2013, and thereafter served as the Chairman of FPX from April of 2013 through the present.

17.    On information and belief, Acclaim then entered into a licensing agreement with FPX, a software company, pursuant to which FPX has integrated and now uses Glider's software, and in doing so uses the trade secrets and intellectual property of Glider.

18.    Specifically, FPX has renamed the Glider software and function thusly: "The Smart Contract Management application – the one powered by the FPX Predictive Analytics engine." *See* http://fpx.com/applications/smart-contract-management.

19.    At all times prior to the Stock Sale Agreement, Glider held full and complete rights,

title, and interest in the Glider Software and all aspects thereof, and thereby held full and complete rights, title, and interest in all copyrights and attendant intellectual property rights in the Glider Software.

20. Pursuant to the Stock Sale Agreement, Acclaim agreed to pay $3,000,000, the payment of which was divided between a first cash payment of $1,000,000 and a Promissory Note Payment securing the remaining $2,000,000 owed.

21. Of the $2,000,000 originally secured by Promissory Note, $1,143,303.09 in principal, plus interest, was payable to Rubel. The Rubel Promissory Note ("Rubel Note") is attached hereto as Exhibit 2 and incorporated herein by reference.

22. On information and belief, as part of the license agreement entered into between FPX and Acclaim, FPX agreed to pay the amounts due under the Promissory Note Payment, including the amounts owed under the Rubel Note.

23. The Rubel Note provides that the outstanding amount due was payable on or before February 10, 2015. *See* Ex. 2.

24. On February 7, 2015, at the request of Dave Batt and Audrey Spangenberg, Acclaim and Rubel entered into a letter agreement by which they agreed to extend the February 10, 2015 payoff date to August 10, 2015. Said Letter Agreement is attached hereto as Exhibit 3 and incorporated herein by reference.

25. To date, Acclaim and FPX have failed to pay the monies owed to Rubel under the Rubel Note, which represents over 35% of the total consideration that Acclaim is contractually obligated to pay for Glider.

26. As a result of the event of default, Rubel requested by letter dated September 11th 2015, pursuant to paragraph 8.2 of the Stock Sale Agreement, further assurances from Acclaim and even

proposed several options for Acclaim's compliance with this obligation.

27. Paragraph 8.2 of the Stock Sale Agreement provides that "[i]f at any time after the Closing any further action is necessary or desirable to carry out the purposes of this [Stock Sale] Agreement and its contemplated transactions, each of the Parties will take further actions, including the signing and delivery of further instruments and documents, as the requesting Party reasonably may request, all at the sole cost and expense of the requesting Party." *See* Ex. 1 ¶ 8.2.

28. Despite this contractual agreement, Acclaim has refused to comply with this Post-Closing Covenant.

29. Acclaim and FPX continue their possession, use and marketing of the Glider software and intellectual property

30. Based on their continued breach under the note, Rubel hereby brings its claim in a court within the state of Texas, as required by the Rubel Note and agreed to by the Parties.

## COUNT I

## DEFAULT ON PROMISSORY NOTE

31. Rubel repeats and realleges paragraphs 1 through 30 above as if fully set forth herein.

32. Defendants have failed to pay the sums due and owing under the Rubel Note on or before the agreed upon deadlines of August 10, 2015.

33. By virtue of Defendants' failure to pay, they have committed an act of default under the Rubel Note.

34. Defendants are required, by the terms and conditions of the Rubel Note, to immediately pay the full amount due and owing plus interest.

**PRAYER FOR RELIEF**

WHEREFORE, Eli Rubel is entitled to judgment as follows:

i. That Defendants have defaulted on the Rubel Note, and that all principal sums and interest are now due and owing;

ii. To the costs and expenses, including reasonable attorney's fees, incurred by Rubel in connection with this action as Rubel is entitled under the Rubel Note and as a result of Defendants wrongful conduct;

iii. To such other additional relief that this Court determines is just, proper, and equitable.

Dated:   September 17, 2015

**FAEGRE BAKER DANIELS LLP**

 /s/ Jesse Linebaugh
Jesse Linebaugh TXAT24036970
*jesse.linebaugh@faegrebd.com*
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309-8011
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

**Attorney for Plaintiff**